461 So.2d 673 (1984)
STATE of Louisiana
v.
Allen J. JOHNSON.
No. 84 KA 0776.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
Ossie Brown, Dist. Atty. by Susan Ponder, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Bonnie Jackson, Asst. Public Defender, Baton Rouge, for defendant-appellant.
*674 Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
Allen J. Johnson was indicted by a grand jury on March 9, 1983, charged with second degree murder of Rosemary Greeley, a violation of La.R.S. 14:30.1, and simple burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2.[1] Defendant pled not guilty and, after a jury trial, was found guilty as charged on each count. The trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the second degree murder conviction and, to five years at hard labor, the first year without benefit of parole, probation, or suspension of sentence on the conviction for simple burglary of an inhabited dwelling, the sentence to be served concurrently with the other sentence imposed.
Defendant brings this appeal urging three assignments of error:
1. The trial court committed error when it allowed introduction, over defense objection, of state exhibits 4 and 5.
2. The trial court committed error when it allowed introduction, over a timely defense objection, of state exhibit 6.
3. The verdict rendered is contrary to the law and/or the evidence.
Assignments of error numbers 1 and 2 were not briefed and are thereby considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

ASSIGNMENT OF ERROR NO. 3:
By means of this assignment, defendant contends that the jury erred by returning a verdict of guilty of second degree murder because the circumstantial evidence linking defendant to the instant crime did not exclude every reasonable hypothesis of innocence.
The standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime and defendant's identity as perpetrator of that crime beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983). The statutory rule as to circumstantial evidence is that assuming every fact proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. However, where circumstantial evidence is used to convict, exclusion of every reasonable hypothesis of innocence is simply a component of the more comprehensive reasonable doubt standard, providing an evidentiary guideline for a jury, and facilitating an appellate court in determining whether a rational juror could have found guilt beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La.1984).
Larry Richardson, common law spouse of Rosemary Greeley, testified at trial that he found his wife dead in a pool of blood in their kitchen when he returned home about 9:30 p.m. on the evening of February 9, 1983. The front door of his house on 40th Street was open. As Mr. Richardson walked through the living room to the kitchen, he noticed that the couch and stereo were pushed from the wall and that his television set was missing.
Various neighbors also testified as to Mr. Richardson's discovery and aided in summoning firemen and police officers to the scene. Richard Sullivan, a Baton Rouge fireman, testified that he was dispatched to *675 the scene about 8:55 p.m. The time of dispatch was also confirmed by the Baton Rouge city police.
Detective Lamar Thompson testified that when he arrived on the scene he noticed that the door was unlocked and that the cablevision wire was pulled outside of the house as if it had been jerked away. He also determined, based on floor markings, that the stove had been pushed away from its normal position.
Crime scene investigators were unable to locate a weapon at the scene. However, various items were collected including knobs from the stove found on the floor in the kitchen. The stove was dusted for fingerprints and aerial photographs were made.
Felix White, who lived two houses from the victim, testified that as he was walking home about 7:20 p.m. on the evening of February 9, 1983, he observed a pickup truck parked in front of the victim's house. He saw two men seated in the truck and heard a third person yell for assistance from inside the house.
Donald Spain and Vince Lanus were arrested on February 11, 1983, charged with accessory after the fact to murder and burglary. Both received plea bargains in exchange for their testimony at trial. Spain testified at trial that defendant called him at his home about 6:00 p.m. on February 9, 1983, inquiring if he knew of anyone who wanted to buy a television set. Defendant had scratches on his face, a knife in his possession, and blood stains on his shirt sleeves when he arrived at Spain's house about thirty minutes after his telephone call. Defendant offered the explanation that his appearance resulted from a recent fight with a fellow who had robbed him a few weeks earlier. After getting Lanus and his pickup truck, Spain, Lanus and defendant went to the victim's house. The front door was unlocked and defendant went inside the house; Spain followed at defendant's request to help in loading the television set. Spain also noted that defendant did not disconnect the cablevision wire until they were outside the house. The three men drove back to Spain's house, some five blocks away. The television set was loaded into a van driven by Spain's uncle and defendant was paid $50.00 for the set. Vince Lanus testified consistently with Spain as did Spain's cousin, Kirk Ridgely, who was at Spain's residence when defendant arrived.
Defendant was arrested on February 12, 1983. He and Spain were held in adjacent cells. During that time, a note was passed to Spain which provided:
Sleepy did you tell them that I had a knife Wensday[sic] because if you didn't then don't because that will make it easy on us all.
Spain, whose street name was "Sleepy", testified that defendant later asked him if he had received the note and asked if he had told the police officers about defendant's knife. As part of his efforts to cooperate with the police, Spain later gave the note to an officer.
Detective Heinrich who assisted in the arrest of defendant noted that defendant had scratches on his face when arrested on February 12, 1983. After having been advised of his rights, defendant told the arresting officers that he had been visiting his girlfriend, Rose Spurlock, several blocks from the victim's house at about 7:30 p.m. on February 9, 1983. However, Rose Spurlock testified at trial that defendant left her house about 5:30 p.m. on February 9, 1983, and did not return until 9:00 p.m. She also noted the scratches on defendant's face and testified that defendant gave her his knife to keep when he returned about 9:00 p.m. She testified that defendant had telephoned her at about 6:00 p.m. that evening and also told her that he had been in a fight with a fellow who had robbed him. A few days after the incident, Ms. Spurlock gave the knife to Deputy Dennis who had been trying to locate defendant on an unrelated matter. Deputy Dennis also saw defendant on Ms. Spurlock's porch when he passed by about 10:30 p.m. on February 9, 1983, but defendant fled out the back as he approached.
*676 Defendant was also observed on the day of the incident by a former classmate, Leroy Williams, who testified that defendant telephoned someone from the laundromat at the corner of Gus Young and 40th Street at about 6:00 p.m. Defendant had scratches on his face and was overheard instructing the party he was talking with not to tell anyone where he was.
A serologist with the Louisiana State Police testified that type A blood was found on the knife defendant had given to Ms. Spurlock and that the victim had type A blood. A latent fingerprint expert with the Louisiana State Police verified that a palm print taken from the stove at the victim's residence was defendant's.[2]
Dr. Landry, who performed an autopsy on the victim, on February 10, 1983, testified that the victim had a large gaping laceration of the neck, several smaller lacerations, and a stab wound to the left upper chest which severed her left lung and caught her diaphragm. The major cause of death was determined to be loss of blood from the great vessels and the wound itself, with shock following the hemorrhaging. Time of death was listed at 7:00 p.m. on the autopsy report, however, Dr. Landry testified that it could easily have been an hour earlier.
Having all this information before it, the jury concluded that every reasonable hypothesis of innocence (that someone other than defendant killed Rosemary Greeley prior to removal of the television set by defendant, Spain, and Lanus) was excluded. Evaluation of the totality of evidence presented convinces us that the jury could have excluded every reasonable hypothesis except murder by defendant. Consequently, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded beyond a reasonable doubt that defendant was guilty of the crime charged. Nealy, 450 So.2d 636, 637.
For the foregoing reasons this assignment of error is without merit.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Although not raised by defendant, we note that the indictment, charging defendant with second degree murder and simple burglary of an inhabited dwelling, is defective because the statute cited therein for count II (LSA-R.S. 14:62) is incorrect. La.C.Cr.P. art. 464 requires the inclusion in an indictment of the official citation of the statute a defendant is alleged to have violated. However, the article further provides that "(e)rror in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." Defendant made no showing of having been mislead to his prejudice. State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.) writ denied, 450 So.2d 644 (La.1984).
[2] Larry Richardson testified that to his knowledge defendant had never been in their kitchen prior to Rosemary Greeley's murder.