952 So.2d 1 (2006)
STATE of Louisiana
v.
Gary SMITH.
No. 2006 KA 0820.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*4 Steven M. Miller, Thibodaux, Counsel for Plaintiff/Appellee State of Louisiana.
Katherine M. Franks, Slidell, Counsel for Defendant/Appellant Gary Smith.
Gary Smith, St. Gabriel, Pro Se.
Before: KUHN, GAIDRY, and WELCH, JJ.
KUHN, J.
The defendant, Gary Smith, was originally charged by bill of information with distribution of marijuana in violation of La. R.S. 40:966. He pleaded not guilty. On February 2, 2005, the state amended the bill of information to additionally charge the defendant as a second or subsequent offender under La. R.S. 40:982 alleging he had previously been convicted of distribution of methamphetamine, possession of marijuana, possession with intent to distribute cocaine and possession with intent to distribute diazepam. The defendant was rearraigned and entered a plea of not guilty to the amended charge. Following a trial by jury, the defendant was convicted as charged. He moved for a new trial and post verdict judgment of acquittal. The trial court denied both motions. The defendant was sentenced to imprisonment at hard labor for twenty years. The sentence was ordered to be served concurrently with a term of imprisonment the defendant was then serving on a parole revocation in the 32nd Judicial District Court, under docket number 240356.
The defendant now appeals, filing pro se and counseled briefs. We vacate the defendant's conviction and sentence for the second or subsequent offense distribution of *5 marijuana. We order the entry of a conviction for the lesser offense of distribution of marijuana in violation of La. R.S. 40:966. The case is remanded to the trial court for sentencing on the modified judgment of conviction.

FACTS
On July 2, 2004, in connection with an undercover operation targeting street-level drug dealers, officers Jeff Chamberlain and Steven Frechou of the Thibodaux Police Department Narcotics Division purchased two ounces of marijuana from Tony Smith. Tony Smith was immediately arrested and charged with distribution of marijuana. The defendant, Tony's brother, who arrived in the area and delivered the marijuana to Tony immediately prior to the sale, was also arrested and charged with distribution of marijuana. Because he had prior drug convictions, the defendant was charged and convicted as a second or subsequent offender under La. R.S. 40:982.

SUFFICIENCY OF THE EVIDENCE
In cases such as this one, where the defendant has raised issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence before discussing the other issues raised on appeal. State v. Hearold, 603 So.2d 731, 734 (La.1992). The sufficiency issue must be decided first because a finding of insufficient evidence to support the guilty verdict bars the retrial of a defendant based on the constitutional protection against double jeopardy. Thus, all other issues would be rendered moot. State v. Davis, 01-3033, pp. 2-3 (La.App. 1st Cir.6/21/02), 822 So.2d 161, 163. Accordingly, we will first address the sufficiency of the state's evidence.
The defendant does not challenge the sufficiency of the state's evidence presented as proof of his prior convictions. Instead, the crux of the defendant's sufficiency argument is that the state failed to prove that he participated in any way in the sale of the marijuana to the undercover officers. The defendant asserts the state failed to present any credible evidence connecting him with the transaction. He argues the testimony of the officers was incredible and was insufficient to meet the state's burden of proving his guilt beyond a reasonable doubt.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.Code Crim. P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The standard of review of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), incorporated in La.C.Cr.P. art. 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Nevers, 621 So.2d 1108, 1116 (La.App. 1st Cir.), writ denied, 617 So.2d 906 (La. 1993). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Shanks, 97-1885, pp. 3-4 (La.App. 1st Cir.6/29/98), 715 So.2d 157, 159.
The Jackson standard is applicable in cases involving both direct and circumstantial *6 evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Booker, XXXX-XXXX, p. 4 (La.App. 1st Cir.2/14/03), 839 So.2d 455, 459, writ denied, XXXX-XXXX (La.10/31/03), 857 So.2d 476.
This standard of review, in particular the requirement that the evidence be viewed in the light most favorable to the prosecution, obliges the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. State v. Mussall, 523 So.2d 1305, 1308-11 (La.1988). Thus, the reviewing court is not permitted to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. See State v. Burge, 515 So.2d 494, 505 (La.App. 1st Cir.1987), writ denied, 532 So.2d 112 (La. 1988). This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. See State v. Houston, 98-2658, p. 5 (La.App. 1st Cir.9/24/99), 754 So.2d 256, 259.
At the trial of this matter, the following testimony was presented regarding the events immediately preceding the marijuana transaction:
Officer Kyle Cressionie, a state's witness, testified he was employed by the Thibodaux Police Department Narcotics Division. He further testified that on or about July 2, 2004, narcotics officers Jeff Chamberlain and Steven Frechou were involved in an undercover operation targeting street-level narcotics distributors. Cressionie explained that, in connection with the operation, Chamberlain and Frechou traveled in an unmarked vehicle to make contact with suspected dealers. Chamberlain drove the vehicle and Frechou rode in the front passenger seat. Cressionie followed in another vehicle acting as safety cover. He was able to see the defendant arrive at the carwash and observed Tony approach the truck, but Cressionie could not tell what Tony was doing at the truck.
Officers Frechou and Chamberlain gave identical accounts of the events immediately preceding the purchase. Both officers testified that they made contact with Tony as he walked down Louisiana Highway 1. The officers offered Tony a ride and he accepted. Tony entered the vehicle and sat in the rear passenger seat.
Inside the vehicle, Tony asked the officers what they were looking for. Chamberlain told Tony they were looking for "green" (street terminology for marijuana). Tony told the officers that he could get the green for them, but he would need to call his brother. Tony used Chamberlain's cell telephone to contact an individual he described as "his brother." Tony told his brother that he was with two friends and that they wanted to purchase some marijuana. Tony told his brother that he worked with Frechou and Chamberlain, who Tony referred to as "Mike and Greg," and assured him that they could be trusted. While he talked on the phone, Tony quoted the officers a price of $60.00 per ounce. Chamberlain requested two ounces. The men agreed to meet at the Hickory Street carwash to complete the transaction. According to the officers, the individual with whom Tony spoke on the phone actively participated in the negotiations. The individual even called *7 back to Chamberlain's cell phone once attempting to change the meeting location. For jurisdictional and safety reasons, the officers refused. They drove to the Hickory Street carwash, parked, and waited for Tony's brother to arrive to make the delivery. Tony explained that his brother would be driving a white Ford pickup truck.
Sometime later, an individual, subsequently identified as the defendant, arrived at the Hickory Street carwash in a white pickup truck. Tony told the officers, "[T]hat's my brother . . . I'll be right back." Tony exited the vehicle and walked up to the driver's side window of the truck. According to Frechou and Chamberlain, they observed the driver of the truck hand Tony a brown plastic bag. Tony placed the bag in the front pocket of his pants, attempted to cover it with his shirt and proceeded to walk back towards the undercover vehicle. Back inside the vehicle, Tony handed Chamberlain the brown bag from which Chamberlain removed two smaller Ziploc bags of marijuana. Upon receiving $120.00 in cash from Chamberlain, Tony exited the vehicle. Chamberlain contacted Cressionie and advised that the transaction was complete. Tony, the defendant, and a passenger in the defendant's truck, Ralph Clement, were immediately arrested and taken into custody.[1]
Frechou and Chamberlain testified that they personally observed the defendant hand the bag of marijuana to Tony. They explained that although they were parked in the second carwash stall, they had a direct view to the defendant's vehicle. They also denied having observed any bulges in Tony's pants prior to the defendant's arrival.
Through the testimony of Tony Smith, Ralph Clement, Ashley Lirette, and Ester Piediscalzi, the defense presented a different version of the facts and circumstances surrounding the transaction. Tony admitted to selling the marijuana to the officers, but denied that the defendant had anything to do with the sale. Tony claimed he had the marijuana tucked away in his pants from the time he initially entered the undercover vehicle. He claimed he called the defendant to meet him at the carwash because he wanted a ride and because he was afraid to complete the transaction while alone. He said that he was intimidated by Frechou and Chamberlain and feared they would rob him.
According to Tony, the officers parked in the last carwash stall, thereby making it impossible for them to have observed his interaction with his brother at the truck. Tony claimed he walked up to his brother's truck, reached in and shook Clement's hand, and told the two he would be right back. He was going to tell his friends (Frechou and Chamberlain) goodbye. Tony testified the defendant was unaware of the planned drug transaction. Clement also testified that the defendant did not give Tony anything out of the truck window.
To support his claim that Tony always possessed the marijuana and had not received it from the defendant, the defendant presented the testimony of Ashley Lirette and Ester Piediscalzi. Ashley, the mother of the defendant's grandson, testified that she was riding down Louisiana Highway 1 with her friend, Ester, when she saw Tony walking. Ashley decided to give Tony a ride. While in the vehicle, Tony pulled out a bag of marijuana, showed it to Ashley and Ester and asked if *8 they wanted to buy some. Ashley stated she told Tony she was not interested in purchasing the illegal drugs and she did not want the drugs in her car. Ashley stopped the vehicle and put Tony out of her vehicle only to later observe him entering the undercover vehicle. Ester also testified. Her testimony was consistent with that of Ashley.
Under La. R.S. 40:966(A)(1), it is unlawful for any person to knowingly or intentionally distribute marijuana, a Schedule I controlled dangerous substance. For purposes of the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961 to 40:995, "distribute" is defined as "to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner." La. R.S. 40:961(14). "Dispense" is defined as "to deliver a controlled dangerous substance to the ultimate user or human research subject by or pursuant to the lawful order of a practitioner, including the packaging, labeling, or compounding necessary to prepare the substance for such delivery." La. R.S. 40:961(13). "Deliver" and "delivery" are defined as "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." La. R.S. 40:961(10). The case law has defined "deliver" as transferring possession or control. The transfer of possession or control, i.e., distribution, is not limited to an actual physical transfer between the culpable parties, but may be accomplished by the imposition of a third party. State v. Parker, 536 So.2d 459, 463 (La.App. 1st Cir.1988), writ denied, 584 So.2d 670 (La. 1991).
A defendant may be guilty as a principal in the crime of distribution if he aids and abets in the distribution or directly or indirectly counsels or procures another to distribute a controlled dangerous substance. See La. R.S. 14:24. Although "[i]t is not necessary to `sell' contraband to aid and abet its distribution" a "distributor" must do more than merely receive the controlled substance as a user. State v. Celestine, 95-1393, p. 3 (La.1/26/96), 671 So.2d 896, 897 (per curiam)(and cases cited therein).
It is well settled that the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. State v. Taylor, 97-2261, pp. 5-6 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932.
In the instant case, the jury was presented with conflicting testimony about the facts and circumstances surrounding the marijuana distribution transaction. On one hand, the police officers testified that Tony stated he would have to get the marijuana from the defendant to sell to them. Thereafter, the officers claimed they personally observed the defendant hand Tony the exact same package of marijuana that Tony subsequently sold to them. Tony, on the other hand, claimed he was the sole participant in the drug distribution and that the defendant was unaware of the impending drug transaction. According to Tony, the defendant thought he was there only to give Tony a ride. Faced with conflicting accounts of the events, the jury was forced to make a credibility determination.
The guilty verdict indicates that the jury, after hearing the testimony and evaluating *9 the credibility of the witnesses, accepted the testimony of the state's witnesses as true and rejected the hypothesis of innocence offered by the defendant. The jury apparently believed that the defendant delivered all, or part, of the marijuana Tony sold to the officers.
Therefore, considering the foregoing, we are convinced that the evidence presented at the trial of this matter, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant participated in the distribution of marijuana in this case. These assignments lack merit.

MISAPPLICATION OF LA. R.S. 40:982 DENIAL OF MOTION FOR NEW TRIAL
The defendant argues the trial court erred in charging, convicting, and sentencing him under La. R.S. 40:982, which does not define a crime. Relying on the recent Supreme Court decision in State v. Skipper, 04-2137 (La.6/29/05), 906 So.2d 399, which states that La. R.S. 40:982 is a sentencing enhancement provision and does not describe a substantive offense, the defendant argues his conviction and sentence (for a non-crime) under this statute are invalid and must be vacated. In a related argument raised in his pro se brief, the defendant asserts the trial court erred in denying his motion for a new trial based upon the misapplication of La. R.S. 40:982 as a substantive offense.
As previously noted, the defendant was charged as a second or subsequent drug offender. Prior to trial, the defendant objected to the inclusion of the prior drug convictions in the bill of information as elements of the crime. The trial court, following the jurisprudence from this court, ruled that the prior drug convictions were elements of the La. R.S. 40:982 charge and had to be alleged in the bill of information and proven at trial. After the defendant was convicted, but before he was sentenced, the Supreme Court overruled the prior jurisprudence with its decision in Skipper.
In Skipper, the defendant filed a pretrial motion to quash the bill of information charging him with a second drug offense under La. R.S. 40:982. The defendant argued that by placing the fact of his prior drug conviction in the bill of information, reading that charge to the jury, and permitting the state to present evidence of that prior conviction to the jury at the trial, his federal and state constitutional rights would be violated. The trial court granted the motion to quash, and the state sought review in the Supreme Court.[2] The Supreme Court held:
La. R.S. 40:982 should be treated as a sentencing enhancement provision after conviction, like La. R.S. 15:529.1, and not as a substantive element of the presently-charged offense. Specifically, the allegations of the prior offense must not be placed in the charging instrument of the second or subsequent drug-related offense nor may evidence of the prior offense be presented to the jury determining the defendant's guilt or innocence in the trial of the second or subsequent drug-related offense for the purpose of sentence enhancement under La. R.S. 40:982.

State v. Murray, 357 So.2d 1121 (La. 1978), and any appellate decisions, as discussed herein, which stand for the proposition that a prior conviction must be placed in the charging instrument of *10 the second or subsequent drug-related offense or proved to the jury in order to enhance the sentence of a drug-related felony under La. R.S. 40:982, are hereby overruled.
So finding, we hold that the trial court properly granted the motion to quash the bill of information in this matter as the state misapplied La. R.S. 40:982 by placing the allegation of the prior offense in the bill of information. The ruling of the trial court on the motion to quash is AFFIRMED.
State v. Skipper, 04-2137 at pp. 25-26, 906 So.2d at 416-17.
Initially we note that the jurisprudence supports retroactive application of new rules to cases pending on direct review or not yet final. See State v. Ruiz, 06-30, p. 8 (La.App. 3d Cir.5/24/06), 931 So.2d 472, 478 (and cases cited therein). And since the defendant had been tried and convicted but was awaiting sentencing when the supreme court issued its opinion in Skipper, we apply that holding retroactively in our review of this case.
In State v. Ruiz, 06-30 at p. 1, 931 So.2d at 474, the defendant had been charged in the bill of information with possession of cocaine, second offense, in violation of La. R.S. 40:967 and La. R.S. 40:982, and distribution of cocaine, second offense, in violation of La. R.S. 40:967 and La. R.S. 40:982. The Third Circuit found the second offense of each conviction severable from the first, emphasizing that in Skipper, the supreme court specifically stated, "Unlike criminal statutes which contain their own enhancement provisions for multiple violations of the same criminal act, La. R.S. 40:982 is a completely separate statute which does not in and of itself define a crime." State v. Ruiz, 06-30 at p. 9, 931 So.2d at 480 (quoting Skipper, 04-2137 at p. 24, 906 So.2d at 716). Relying on this language, the Ruiz court opted to vacate only the La. R.S. 40:982 (second-offense) portions of the defendant's convictions. The court explained:
Considering that the statutes are separate from one another, that La. R.S. 40:982 has no substantive provisions and no bearing upon the most recent conduct at issue, and that a substantive provision, La. R.S. 40:967, was also charged in relation to both counts, we find that while the convictions for a second offense under La. R.S. 40:982 should be reversed as convictions for non-crimes, the substantive portion of the offenses under La. R.S. 40:967 is severable from the non-crimes of second-offense possession and second-offense distribution.
State v. Ruiz, 06-30 at pp. 9-10, 931 So.2d at 479.
After our thorough review of the jurisprudence on this issue, in this case we find, as did the Ruiz court, that the La. R.S. 40:982 (second or subsequent offense) conviction is severable from the portion of the conviction that relied upon La. R.S. 40:966 (distribution of marijuana) and the most recent conduct. As the Supreme Court noted in its opinion, the two statutory provisions  one describing the substantive offense and the other a sentencing enhancement  are completely separate and have no bearing upon one another. La. R.S. 40:982 has no independent provisions that bear upon the most recent incident of distribution that initiated the current proceedings, and upon which the current conviction partly rests. The bill of information cites both statutes. The unconstitutionality of one portion of a statute does not necessarily render the entire statute unenforceable. If the remaining portion of the statute is severable from the offending portion, the jurisprudence supports striking only the offending portion and leaving the remainder intact. See State v. Ruiz, 06-30 at p. 11, 931 So.2d at *11 480. Thus when, as here, a section of law is stricken and the remaining sections are complete in themselves, and capable of being executed, wholly independent of the section which was rejected, and where there is no conflict in the penalties imposed and no confusion, the conviction under the valid section will stand. Id.
Consequently, since only La. R.S. 40:982 has been deemed a non-crime, and since La. R.S. 40:966 contains no proscriptions against the most recent conduct charged, i.e., distribution of marijuana, we choose to vacate only the second or subsequent drug conviction portion of the defendant's conviction and sentence under La. R.S. 40:982. Accordingly, we enter a modified judgment of conviction for the most recent conduct of distribution of marijuana in violation of La. R.S. 40:966.[3] However, in order to affirm the defendant's conviction as a La. R.S. 40:966 violation, we must consider the effect of the jury's exposure to evidence of the defendant's prior drug convictions on the defendant's right to a fair trial.

PREJUDICIAL INTRODUCTION OF PRIOR CONVICTIONS
The defendant argues that the inclusion of his prior drug convictions in the bill of information was in derogation of the supreme court's ruling in Skipper. He asserts the introduction of evidence of the prior convictions before the jury was highly prejudicial and deprived him of his right to a fair trial. The defendant further asserts "there is no way that the error in introducing the four previous convictions can be deemed harmless."
The defendant asserts, and we agree, that under Skipper it was error for the state to charge the prior drug convictions in the bill of information and to introduce evidence of the convictions before the jury at the defendant's trial. However, the determination that other crimes evidence was improperly admitted at trial does not end our inquiry. The erroneous admission of other crimes evidence is a trial error subject to harmless error analysis. Accordingly, we must now determine whether the erroneous admission of the "other crimes" evidence at the defendant's trial was harmless or the basis for reversal. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 100. The test for harmless error is whether the guilty verdict "was surely unattributable to the error." State v. Crotwell, 2000-2551, p. 13 (La.App. 1st Cir.11/9/01), 818 So.2d 34, 44. The pertinent inquiry to determine if a trial error is harmless is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. State v. Maise, XXXX-XXXX, pp. 8-9 (La.1/15/02), 805 So.2d 1141, 1148.
The jury in this case heard the testimony of officers Frechou and Chamberlain, both of whom personally observed Tony Smith contact the defendant and tell him that they were interested in purchasing two ounces of marijuana. The officers also observed the defendant arrive at the designated location and hand something to Tony who immediately returned to the undercover vehicle and sold two ounces of marijuana to the officers for $120.00. Furthermore, the record reflects that the trial court gave a limiting instruction to the jury that the prior convictions cannot be considered in the determination of the defendant's *12 guilt or innocence on the primary offense charged. The trial judge specifically explained:
[i]f you find that the defendant was previously convicted as alleged, then he is subject to an enhanced penalty if you find him guilty of the conduct charged in the bill of information. The prior convictions are alleged solely to enhance the penalty if you convict the defendant of the offense charged. You are not to consider or in any way take the prior convictions into-account in determining the defendant's guilt or innocence of the conduct charged in this bill of information.
Considering the foregoing, we are convinced that the guilty verdict rendered in this trial was surely unattributable to the fact that the jury was exposed to evidence of the defendant's criminal history. These assignments of error lack merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant asserts he received ineffective assistance of counsel at trial. The defendant notes three instances in which he claims that failure of his trial counsel to properly represent him affected the outcome of his case. He claims his counsel's performance fell below the standard when he failed to: (1) object when the trial court allowed written evidence of his prior convictions to be taken into the jury room during deliberations; (2) offer expert testimony as to the effects of drinking alcohol and whether impairment existed; and (3) object to the prejudicial jury instructions.
It is well settled that a claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted. But, if the record discloses the evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by an assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Williams, 632 So.2d 351, 361 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139.
But the particular allegations of ineffective assistance of counsel alleged by the defendant herein cannot be sufficiently investigated from the inspection of the record alone. Each of these allegations (failure to object to the jury's review of written evidence during deliberations, failure to present evidence of the effects of alcohol or evidence of impairment, and the failure to object to jury instructions) may involve matters of trial preparation or strategy. It is well settled that decisions relating to investigation, preparation, and strategy require an evidentiary hearing and cannot possibly be reviewed on appeal. See State v. Martin, 607 So.2d 775, 788 (La.App. 1st Cir.1992). Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated.[4] Accordingly, these allegations are not subject to appellate review. See State v. Albert, 96-1991, p. 11 (La. App. 1st Cir.6/20/97), 697 So.2d 1355, 1364.

DENIAL OF NEW TRIAL FOR CONSUMPTION OF ALCOHOL BY JURORS DURING RECESS
The defendant contends the trial court erred in failing to grant his motion *13 for a new trial based upon the fact that several jurors consumed alcoholic beverages during the trial proceedings. The defendant further asserts the trial court erred in limiting the scope of the evidentiary hearing on the issue and in failing to take any adjudicative actions against the jurors in question based upon their misconduct.
Following the conclusion of the defendant's trial, juror Pamela Pitre contacted the defense attorney and advised that several of the jurors in the defendant's case were observed consuming alcoholic beverages with their lunch on the second and third days of the trial. The defendant filed an amended motion for a new trial based upon this information. The defendant alleged the jurors' actions of consuming alcoholic beverages during jury service is defined as juror misconduct and prohibited by La. R.S. 14:130.[5] He contends that as a result, members of the jury were impaired in their ability to properly perform their duties, thereby denying the defendant of his constitutional right to a trial by an alert and serious tribunal. The defendant further asserts the trial judge erred in denying defense counsel the right to subpoena the jurors named as participating in the alleged misconduct for the evidentiary hearing.
Upon reviewing the new trial motion and hearing argument of counsel, the trial court ordered an evidentiary hearing on the issue of alcohol consumption by the jurors. The trial court specifically noted that although the defendant's motion for a new trial contained conclusory allegations of impairment, it was unclear from the motion whether the defendant, his counsel, or the juror who reported the conduct drew this conclusion. The trial court ordered juror Pitre to testify. The trial judge specifically explained the main purpose of the hearing would be to establish if any evidence of impairment or intoxication existed, explaining:
[T]he issue, the proof that the Court will be primarily concerned with is whether or not that witness will in fact testify under oath that there was consumption of alcohol by jurors during the evidentiary phase of the trial. But even more importantly, whether or not that juror can testify that there were physical manifestations that a lay person could observe which would prove that the jurors, one or more jurors were actually impaired. Because only if a juror is impaired is there even the potential of harm to the defendant.
At the hearing on the motion for a new trial, Pitre, the sole witness, testified that juror Cynthia Ramsey was observed drinking a Guinness beer and juror John Arvello drank three Miller Lite beers during the April 27, 2005 lunch break at Pepper's Pizza. Pitre further testified that the following day, Arvello drank two Miller Lite beers and Donald Rouse consumed a Bloody Mary cocktail during the lunch break at Spahr's Restaurant. Pitre testified she did not report these observations during the trial because, although the consumption of alcohol during jury service did not "sit right with [her]", she did not know that the behavior constituted jury misconduct.
Despite having been advised by the trial court that such evidence would be critical at the hearing, counsel for the defendant did not present any evidence of intoxication or impairment. Instead, defense counsel argued that the evidence of the *14 consumption of alcohol alone was sufficient to entitle the defendant to a new trial. In response, the state noted the lack of evidence of the effects of alcohol on the jurors in question or on the deliberations.
In denying the motion for a new trial on this ground, the trial court reasoned:
The evidence of Ms. Pitre proves that more than one juror during the evidentiary portion of the trial consumed alcohol. This is in violation of the duties of a juror. However, there was no evidence that any juror was under the influence of alcohol or impaired by alcohol during the presentation of evidence or during jury deliberations.
Ms. Pitre testified that she observed consumption of alcohol. She did not testify that she observed any type of physical or mental impairment of any juror at any time during the trial of this matter, whether it was during the presentation of evidence or during jury deliberations.
Furthermore, this Court has been unable to identify any case holding that mere consumption of alcohol, with no proof of impairment, should result in declaring a mistrial or should support the granting of the [m]otion for [n]ew trial.
And finally, the Court will state for the record that at no time during this trial, either during the presentation of evidence, or at times when the jury came before the Court after the presentation of evidence, was there any indication of any impairment of any juror.
Following a review of the record in this case, we find no error in the trial court's denial of the motion for a new trial on this ground. As the trial court correctly noted, the defendant failed to present any evidence of impairment or intoxication. Proof that a juror has consumed alcohol does not in and of itself entitle the defendant to a new trial. It is incumbent upon the defendant to establish that the mind of the juror was affected by alcohol or that he suffered from some degree of intoxication. No such evidence was presented herein.
Drinking alone, without a showing of prejudice, will not suffice to avoid a verdict. See 75 Am.Jur.2d § 1616; Annot. 7 A.L.R.3d 1040, 1050 (1966). The trial court must examine the circumstances to determine if prejudice resulted from this jury misconduct. See United States v. Taliaferro, 558 F.2d 724, 726 (U.S. 4th Cir.1977) (per curiam), cert. denied, 434 U.S. 1016, 98 S.Ct. 734, 54 L.Ed.2d 761 (1978). Because the controlling test is whether the defendant was denied a fair trial, if a juror's judgment is affected by alcohol during consideration of the case, the verdict would not stand. No such showing was made in the instant case. The defendant's argument in support of his motion for a new trial rested solely on the consumption of alcohol by the jurors rather than any actual prejudice resulting therefrom.[6]
Insofar as the defendant claims the trial court condoned the illegal conduct, we note the following remark by the court:
Again, I want to make it clear in this ruling that this Court finds that the fact that there was consumption of alcohol by jurors is unacceptable. To be quite *15 frank, this is my twelfth year of doing this. I've never, ever heard of jurors consuming alcohol. And I guess it's one of the many other things that will have to be added to the admonitions given to jurors before there's any break.
But again, the only evidence before the Court today is that there was consumption of alcohol. No evidence of any type of impairment, and this Court did not witness any impairment. And because I do not believe that there's this threshold evidence of impairment, the Court will again maintain its earlier ruling that it would be improper to call those jurors and to inquire directly of them of their actions, both during the presentation of evidence and also during jury deliberations.
Therefore, contrary to the defendant's assertions, the record before us reflects that the trial court gave the matter careful consideration. The trial court unequivocally condemned the consumption of alcoholic beverages during jury service, but found that the defendant was not denied a fair trial. In denying the motion for a new trial, the trial court noted that there was absolutely no evidence that any juror was intoxicated.
Finally, the defendant argues the trial court erred in denying his counsel's request to call the named jurors to testify during the hearing on the issue of alcohol consumption.
La.Code Evidence article 606(B) provides, in pertinent part:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention.
The prohibition in this article is intended to preserve the finality of jury verdicts and the confidentiality of discussions among jurors. See State v. Duncan, 563 So.2d 1269, 1272 (La.App. 1st Cir. 1990). However, the jurisprudence has established the prohibition against juror testimony is not absolute and must yield to a substantial showing that the defendant was deprived of his constitutional rights. Well-pleaded allegations of prejudicial juror misconduct violating a defendant's constitutional rights will require an evidentiary hearing at which jurors shall testify. State v. Duncan, 563 So.2d at 1272.
In denying the defendant's request to call the jurors in question, the trial court specifically noted there had been no threshold showing of impairment. The trial court found that absent such evidence of prejudice, there could be no substantial showing of deprivation of constitutional rights to require or allow members of the jury to testify. Under these circumstances, we find that the trial court correctly applied the jury shield law and limited the testimony at the new trial hearing.
For all of the foregoing reasons, we find no error in the trial court's denial of the defendant's motion for a new trial based upon jury misconduct. These assignments of error lack merit.

NON-UNANIMOUS JURY VERDICT
The defendant contends the trial judge erred in accepting the non-unanimous jury verdict as legal. While he concedes that the verdict is in conformity with *16 the present state of the law, the defendant maintains that, in light of recent jurisprudence, La.Code Crim. P. art. 782 and La. Const. art. I, § 17 (providing for jury verdicts of 10 to 2 in cases in which punishment is necessarily confinement at hard labor) violate the Sixth and Fourteenth Amendments of the United States Constitution. Thus, the defendant argues the 10-2 jury verdict is unconstitutional.
The punishment for distribution of marijuana is confinement at hard labor. See La. R.S. 40:966(B)(3). Louisiana Constitution article I, § 17(A) and La.Code Crim. P. art. 782(A) provide that in cases where punishment is necessarily at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant's right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. See Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); State v. Belgard, 410 So.2d 720, 726 (La.1982); State v. Shanks, 97-1885, pp. 15-16 (La. App. 1st Cir.6/29/98), 715 So.2d 157, 164-65.
The defendant's reliance on Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) is misplaced. These Supreme Court decisions do not address the issue of the constitutionality of a non-unanimous jury verdict; rather, they address the issue of whether the assessment of facts in determining an increased penalty of a crime beyond the prescribed statutory maximum is within the province of the jury or the trial judge, sitting alone. Nothing in these decisions suggests that the jury's verdict must be unanimous for a defendant's conviction to be constitutional. Accordingly, La. Const. art. I, § 17(A) and La.Code Crim. P. art. 782(A) are not unconstitutional and, hence, not violative of the defendant's Sixth Amendment right to trial by jury.

DENIAL OF HEARING ON SLEEPING BAILIFF
The defendant urges that the trial court erred in denying defense counsel the opportunity to address the factual issue raised concerning a trial court bailiff who allegedly fell asleep and was snoring so loudly that the jurors were prevented from hearing the evidence during the trial. The defendant argues the trial court should have held an evidentiary hearing to address the merits of the claim.
As previously noted, the jury shield law prohibits testimony by jurors unless there are well-pleaded allegations of prejudicial juror misconduct violating the defendant's constitutional rights. The trial court found insufficient evidence to support the defendant's claim. In denying the defendant's motion for a new trial on this ground, the trial judge noted that it did not observe any sleeping by the bailiff in question or any noise loud enough to affect the jurors' ability to hear and see the evidence being presented. He further noted that there was never a complaint that the jury was experiencing any difficulty. Thus, the trial court concluded the defendant's claim failed to allege juror misconduct in the nature of constitutional violations with sufficient particularity to require or allow members of the jury to testify.
The trial court properly weighed the constitutional rights of the defendant and *17 the protection that it is required to afford juries and individual jurors. The trial court found that the allegations of a sleeping bailiff did not rise to the level which would permit inquiry into the jury process. The record supports this conclusion. The trial court did not err in relying on its observations and refusing to order an evidentiary hearing on this issue. This assignment of error lacks merit.

UNAUTHORIZED LEGAL ADVICE BY TRIAL COURT
The defendant asserts the trial court erred in issuing unauthorized legal advice to the prosecutor during the trial. Specifically, the defendant points to the portion of the trial wherein the prosecutor questioned Officer Cressionie regarding the circumstances surrounding Officer Frechou's alleged suspension from his employment.
In this case, this court is not at liberty to consider the correctness of the trial court's actions in the aforementioned instance in light of the fact that the defendant failed to raise a contemporaneous objection. "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim. P. art. 841(A). The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. State v. Hilton, 99-1239, p. 12 (La.App. 1st Cir.3/31/00), 764 So.2d 1027, 1035, writ denied, 00-0958 (La.3/9/01), 786 So.2d 113. The rule also prevents a defendant from "sitting on" an error and gambling unsuccessfully on the verdict, then later resorting to an appeal on an error that might have been corrected at trial. State v. Duplissey, 550 So.2d 590, 593 (La.1989). Since the defendant failed to lodge a contemporaneous objection to the trial court's statements, he is precluded from raising this issue for the first time on appeal. This assignment of error lacks merit.

DECREE
For all these reasons, we reverse the defendant's original conviction, amend the judgment of conviction to distribution of marijuana and, as amended, affirm the conviction. The sentence imposed by the trial court is vacated and the matter remanded for sentencing on the amended judgment of conviction.
ORIGINAL CONVICTION AMENDED TO DISTRIBUTION OF MARIJUANA AND, AS AMENDED, THE CONVICTION IS AFFIRMED. SENTENCE VACATED AND REMANDED FOR SENTENCING ON AMENDED JUDGMENT OF CONVICTION.
WELCH, J., dissents with reasons.
WELCH, J., dissenting.
I respectfully dissent from the majority opinion because I believe there were two fatal flaws in the proceedings below which mandate that the defendant's conviction be reversed and his sentence vacated.
First, the defendant's conviction should be reversed based on the constitutional error pointed out by our supreme court in State v. Skipper, 2004-2137 (La.6/29/05), 906 So.2d 399, which the majority expressly notes is applicable to this case. In Skipper, the Supreme Court held
that La. R.S. 40:982 should be treated as a sentencing enhancement provision after conviction, like La. R.S. 15:529.1, and not as a substantive element of the presently-charged offense. Specifically, the allegations of the prior offense must not be placed in the charging instrument of the second or subsequent drug-related offense nor may evidence of the prior offense be presented to the jury *18 determining the defendant's guilt or innocence in the trial of the second or subsequent drug-related offense for the purpose of sentence enhancement under La. R.S. 40:9.

(Emphasis added).
Skipper, 906 So.2d at 416-17.
Therefore, it was legal error for the State to list defendant's four prior convictions in the bill of information,[1] to read them to the jury, to refer to the convictions in its opening statement, to present evidence of the prior convictions via the defendant's probation officer, to publish documentary evidence of the prior convictions to the jury, to refer to the four prior convictions in its closing argument, and to refer the four prior convictions in the jury instructions.
I believe this case falls squarely into the question left unanswered by our supreme court in footnote 23 of Skipper, i.e., the applicability of a harmless error analysis under State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. And, since the trial court gave a limiting instruction, the possible ameliorative effects of that limiting instruction post State v. Green, 493 So.2d 588 (La.1986).
The majority determines that the harmless error analysis is applicable to the Skipper error; however, I believe the approach set forth by the third circuit court of appeal in State v. Robertson, 2006-167 (La.App. 3rd Cir.5/31/06), 931 So.2d 523; State v. Senegal, XXXX-XXXX (La.App. 3rd Cir.5/24/06), 931 So.2d 450; and State v. Peltier, 06-0284 (La.App. 3rd Cir.9/27/06), 937 So.2d 444, (unpublished opinion), which hold that the harmless error analysis is inapplicable, is the correct approach. As stated by the third circuit:
We also note that in our view the inclusion of a prior conviction can never be harmless error. In State v. Prieur, 277 So.2d 126, 128 (La.1973), the Louisiana Supreme Court recognized the prejudicial effect of the introduction of prior convictions, stating:
The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant. As to the prejudicial effect of evidence of other crimes, Wigmore says:
* * * The natural and inevitable tendency of the tribunalwhether judge or juryis to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. * * * 1 Wigmore, Evidence § 194 (3rd Ed.).
This court in State v. Williams, 96-476 (La.App. 3 Cir. 4/30/97), 693 So.2d 870, 873, writ denied, 97-1365 (La.10/31/97), 703 So.2d 20, also stated its concerns with listing prior convictions in a bill of information:
In our view, a prior conviction that is not an element of the substantive offense should not be alleged in a bill of information. It offends the notion of a fair trial. It is naïve to think that its prejudicial impact is somehow vitiated by a limiting jury instruction . . . This statute, La.R.S. 40:92 . . . is a sentencing mechanism. Sentencing is not a jury function; it is a judge function. The jury has no business hearing evidence of the conviction of *19 another crime for the purpose of enhancing a defendant's sentence because it has nothing to do with what sentence will be imposed.
Senegal, 931 So.2d at 454 n. 4.
The majority relies upon State v. Ruiz, 2006-30 (La.App. 3rd Cir.5/24/06), 931 So.2d 472, wherein another panel of the third circuit struck the non-crime portion of the bill of information and applied a harmless error analysis to the introduction of the defendant's prior drug convictions.[2] The Ruiz court took the position that the non-crime portion of the bill of information was severable. However, this result is contrary to the result reached by other panels of the third circuit in Robertson, Senegal, and Peltier, which concluded that the non-crime listed in the bill of information was not severable. The rationale for non-severance was based upon the supreme court's action in Skipper. In Skipper the Supreme Court could have severed the non-crime from the bill of information, and refer the remaining count back for trial. See State v. Coody, 448 So.2d 100 (La.1984). However, since the supreme court chose to quash the bill of information, which contained both charges, it apparently concluded that both charges should be quashed.
Moreover, I believe that even if severance is appropriate and a harmless error analysis is applicable, the error in this case was grossly prejudicial.
Louisiana Revised Statutes 40:982, as interpreted prior to Skipper, required the State to prove a prior drug conviction. In this case, the State proved four prior drug convictions. The defense counsel filed a motion to quash, arguing that the defendant was being charged with a non-crime and that the State was "piling on" and "overloading the gun." I agree. The defendant never disputed his prior convictions, and the State's action in listing the four prior convictions in the bill of information and in proving the four convictions was done specifically to call attention to those prior convictions and to prejudice the jury.
The test for harmless error is whether the guilty verdict "was surely unattributable to the error." State v. Crotwell, 2000-2551 (La.App. 1st Cir.11/8/01), 818 So.2d 34, 44 (quoting State v. Ellis, 99-0425 (La. App. 1st Cir.12/28/99), 756 So.2d 418, 421). The pertinent inquiry to determine if an error at trial is harmless is not whether in a trial that occurred without error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. State v. Maise, XXXX-XXXX (La.1/15/02), 805 So.2d 1141, 1148.
Unlike the scenarios in State v. Wells, XXXX-XXXX (La.App. 5th Cir.3/26/02), 815 So.2d 1063 and Ruiz, wherein the erroneous exposure of the jury to the defendants' criminal history was found to be harmless, there was conflicting evidence in this case. In Wells, fifty rocks of crack cocaine were found in the defendant's pants after he made motions in an attempt to hide them. In Ruiz, the defendant sold cocaine directly to an undercover police officer. Considering the "strong" evidence against the defendants in those cases, the courts found the erroneous exposure of the jury to the fact of the defendants' criminal history to be harmless error. However, in the instant case, I cannot say that the evidence of the defendant's guilt was overwhelming. There was conflicting evidence of whether *20 the defendant actually participated in the drug transaction. There was no hand-to-hand transaction between the defendant and the undercover officers, nor were any drugs found on the defendant's person or in his vehicle. The State's case depended solely on credibility determinations. The jury in this case was required to weigh the testimonial evidence to determine the extent of the defendant's involvement in the drug transaction. Considering the conflicting nature of the evidence presented, I simply cannot conclude the jury's verdict was surely unattributable to the erroneously admitted evidence of prior drug convictions.
However, unlike the Robertson, Senegal, Peltier, and Ruiz cases the trial court did give the following limiting instruction:
If you find that the defendant was previously convicted as alleged, then he is subject to an enhanced penalty if you find him guilty of the conduct charged in the bill of information. The prior convictions are alleged solely to enhance the penalty if you convict the defendant of the offense charged. You are not to consider or in any way take the prior convictions into account in determining the defendant's guilt or innocence of the conduct charged in this bill of information.
Nevertheless, this instruction was not given until the end of the trial, after the jury had already heard the State refer to the four convictions in its opening statement; heard the first witness, the defendant's probation officer, testify to the four prior convictions; reviewed documents showing the four convictions; and heard the State refer to the prior convictions in its closing argument. Thereafter, the court read the conviction in the jury instructions and followed it with the limiting instruction.
It defies reason and common sense to conclude that this limiting instruction could ameliorate the prejudicial effect that the State intended to create by the introduction of the four prior convictions. To ask of the jury the Herculean task of ignoring these convictions, while weighing the conflicting evidence presented at trial, was asking the jury to do the impossible. Accordingly, I believe that the defendant's conviction should be reversed, his sentence should be vacated, and this matter referred back to the trial court for a new trial. See State v. Campbell, 95-1409 (La.3/22/06), 670 So.2d 1212.
The other error that requires a reversal of the defendant's conviction is based on juror misconduct; specifically, the consumption of alcohol by the jurors during their lunch break. Louisiana Revised Statutes 14:130(3) provides that jury misconduct is committed when any juror "use[s] or consume[s] any beverage of low or high alcoholic content during the time he is in actual service as [a] juror."
At the evidentiary hearing on defendant's motion for new trial, juror Pitre testified that during the lunch break on April 27, 2005, juror Ramsey drank a Guinness beer and juror Arvello drank three Miller Lite beers. She also testified that on the lunch break the following day, juror Arvello drank two Miller Lite beers and juror Rouse drank a Bloody Mary.
Despite the statutory prohibition against jurors using or consuming alcoholic beverages during their service, the trial court denied defendant's motion for new trial on the basis that defendant failed to prove physical or mental impairment of any juror at anytime during the presentation of evidence or during their deliberations. While the majority found no error in the trial court's decision, I believe the trial court erred not only in finding that there was no proof of impairment, but also in *21 determining that such proof was necessary to establish that a new trial was warranted. As noted by the majority, "the controlling test is whether the defendant was denied a fair trial"it is not whether the defendant proved that the juror displayed an outward appearance of being physically or mentally impaired. If a juror is under the influence of alcohol during the consideration of the case, then the defendant has been denied a fair trial because the juror's judgment has been affected.
It is generally accepted that the body metabolizes approximately one ounce of alcohol (or one twelve-ounce beer or one four-ounce glass of wine) per hour. While the trial court may have been correct regarding the alcohol consumption of jurors Ramsey and Rouse, I believe there is no question that juror Arvello was under the influence of alcohol on April 27, 2005.
The minutes of the trial court reflect that on April 27, 2005, the jury was excused for lunch at 12:00 p.m. and the trial resumed at 1:45 p.m. During this one hour and forty-five minute time period, juror Arvello had to leave the courthouse, travel to the lunch destination, eat his lunch, drink the three beers, and then return back to the courthouse. Accordingly, there is no doubt that juror Arvello was under the influence of alcohol to a significant degree when the trial resumed at 1:45 p.m. On April 28, 2005, the minutes reflect that the jury was excused for lunch at 11:50 a.m. and the trial resumed at 1:30 p.m. On this day, juror Arvello consumed two beers at lunch. Again, depending upon time and distance to the restaurant, juror Arvello may well have been under the influence of alcohol. Considering the juror misconduct in this case, the defendant was denied a fair trial and I do not believe that the jury's verdict can stand.
Thus, based upon the two glaring legal errors in this case, I would reverse the defendant's conviction, vacated his sentence, and remand the matter for a new trial.
NOTES
[1] Clement was subsequently released without charges based on the officers' belief that they lacked the requisite proof to establish that he was involved with the transaction or aware it was to take place.
[2] Because the trial court's ruling in Skipper included a declaration that La. R.S. 40:982 was unconstitutional, the state appealed directly to the supreme court.
[3] Since the evidence supports a conviction for a lesser and included offense, this court is authorized to render a judgment of conviction on the lesser included responsive offense. See La.Code Crim. P. art. 821(E) & State v. Ortiz, 96-1609, p. 20 (La.10/21/97), 701 So.2d 922, 934, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
[4] The defendant would have to satisfy the requirements of La.Code Crim. P. art. 924 et seq. in order to receive such a hearing.
[5] La. R.S. 14:130 A(3) provides that jury misconduct is committed when "[a]ny petit juror shall either use or consume any beverage of low or high alcoholic content during the time he is in actual service as juror."
[6] Regarding the defendant's contention that the trial court erred in failing to take adjudicative action against the jurors, it is well settled that the decision as to whether any adjudicative action will be taken against individuals who commit criminal offenses lies with the district attorney. See La.Code Crim. P. art. 61. Thus, the trial court lacked the authority to institute criminal proceedings against the jurors under La. R.S. 14:130 for jury misconduct.
[1] The previous convictions listed in the bill of information were: distribution of methamphetamine, January 31, 1979; possession of marijuana (second offense), May 26, 1988; possession with intent to distribute cocaine, November 10, 1993; and, possession with intent to distribute Diazepam, November 10, 1993.
[2] In a pre-Skipper case, the Firth Circuit in State v. Wells, XXXX-XXXX (La.App. 5th Cir.3/26/02), 815 So.2d 1063, also applied a harmless error analysis to the introduction of prior drug convictions.