651 So.2d 955 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Harry L. TAYLOR, Defendant-Appellant.
No. CR94-1072.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1995.
*956 Morgan J. Goudeau III, Opelousas, for State.
Robert Dejean Jr., Opelousas, for Harry L. Taylor.
Before DOUCET, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
Harry Taylor was charged by bill of information with sexual battery, a violation of LSA-R.S. 14:43.1. After trial by jury, the defendant was found guilty as charged. Taylor received a suspended sentence of four years at hard labor and was placed on three and one half years active supervised probation. Raising only the issue of sufficiency of the evidence, the defendant appeals his conviction. We affirm.

FACTS
Harry Taylor was employed as an orderly at the Eunice Care Center, a private nursing home facility which cares for elderly and infirm residents. On Saturday, June 6, 1992, Penny Guillory, a nurse's aide, opened a bathroom door and saw the defendant pressing Rita Miller, a severely mentally handicapped[1] *957 female resident, against the sink with his left hand under her dress. The aide turned and ran from the room unseen, and reported the incident to a co-worker.
Later that afternoon, a nurse noticed blood in Rita's underwear. An examination revealed a blood blister on the inner lips of the vulva area. Dr. Brian Heinen, a family practice physician, examined Rita three days later. Dr. Heinen testified at trial that he found a fresh bruise, approximately two inches by two inches in size, on the right side of the vaginal area. He attributed the bruise to "some type of minor trauma down there" which had occurred no more than three days before his examination.
When Harry Taylor reported to work on Sunday, the day after the incident, he was confronted by Melanie Allison, a licensed practical nurse who supervised the nurse's aides. Ms. Allison told Taylor that he had been seen "having sex" with Rita Miller. Taylor denied the accusation and resigned the following Monday morning. He was arrested one week later.

SUFFICIENCY OF THE EVIDENCE
The defendant contends on appeal that the evidence presented at trial failed to establish beyond a reasonable doubt that he was guilty of sexual battery upon Rita Miller. Specifically, the defendant argues that the testimony of Penny Guillory, the only eyewitness to the incident, was not credible, and that the incident could not have happened in the manner to which she testified.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983) (citing State v. Richardson, 425 So.2d 1228 (La.1983)).
The State bears the burden of proving the elements of the crime of sexual battery beyond a reasonable doubt. LSA-R.S. 14:43.1(A), as amended in 1991, defines sexual battery as follows:
"A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim." (Emphasis added).
At trial, the State presented the following testimony:
Penny Guillory. Ms. Guillory reported to work at Eunice Care Center at 12:45 p.m. on June 6, 1992. She went to the desk at the nurse's station and began to write down the names of the residents whose vital signs she had to take. Rita Miller walked to the desk and asked if someone would put a barrette in her hair. The defendant took the barrette and walked with Rita to her room. Five or ten minutes later, Ms. Guillory went to Rita's room to see if the defendant needed any help. Seeing no one in the room, she left. She returned to the room three or four minutes later, opened the bathroom door, and saw the defendant pressing Rita against the bathroom sink with his left hand under her dress. Ms. Guillory ran from the room and went back to the nurse's station. Ten or fifteen minutes later, after the defendant left the nursing home at 1:15 p.m., she told a co-worker, *958 Joanne Freeman,[2] about the incident, but asked her not to tell anyone else.
Vanessa Fontenot and Martha "Cecile" Miller. Ms. Fontenot and Ms. Miller, housekeepers at the nursing home, worked the 6:30 a.m.-3 p.m. shift on June 6, 1992. They were just getting off their lunch break at 12:30 p.m. when they saw the defendant in the doorway of Leroy Melancon's room, which is connected to Rita Miller's room by a common bathroom. The defendant was out of breath and sweating, and said that he had just finished suctioning mucus from Mr. Melancon's mouth.
Emily Joseph. Ms. Joseph, a nurse's aide, heard about the incident from Joanne Freeman and told Melanie Allison, the nurse on duty.
Melanie Allison. Ms. Joseph reported the incident to Ms. Allison between 12:45 p.m. and 1:00 p.m. Ms. Allison spoke with Penny Guillory by 1:15 p.m. After speaking with Ms. Guillory, Ms. Allison and Felicia Thomas, the nurse who was working the 3:00 p.m. 11:00 p.m. shift, went to Rita Miller's room "to see if she could quote or understand what had happened to her. And, then in the process of Felicia questioning her she needed to urinate. She went to the bathroom and while she was using the rest room I noted that she had some blood in her panties. And from there we assessed her to see if something was unusual, you know, with her at the bottom." The examination revealed a blood blister on the inner lips of the vulva area. Ms. Allison notified Angela Bertrand, the director of nurses, of her findings.
Felicia Thomas. During the examination, Ms. Thomas asked Rita Miller in French "if anyone had touched her down there." Rita said "yes" and started laughing.
Dr. Brian Heinen, M.D. Dr. Heinen examined Rita Miller in his office on Tuesday, June 9, 1992. Dr. Heinen was told by the nurse who accompanied Rita to the office that an "orderly was found under the patient's dress and had no reason or explanation for his conduct.... And that they had noticed some vaginal bleeding shortly thereafter. The patient herself couldn't say anything or give a history of what had happened." Dr. Heinen conducted a pelvic examination and found a bruise on the right side of the vaginal area, which he attributed to "some type of minor trauma down there," occurring no more than three days prior to the examination. The blood blister seen on Saturday by Nurses Allison and Thomas was not inconsistent with the bruise discovered by Dr. Heinen on Tuesday, since the blood blister could have popped and left a bruise-type mark.
The defendant testified at trial on his own behalf. He stated that the allegations made by Ms. Guillory were untrue. He denied going with Rita to her room to help her with her barrette, and denied that he was in Rita's bathroom at the time the incident allegedly occurred. He admitted that at about 12:30 p.m., he was in Mr. Melancon's room, which is connected to Rita's room by a common bathroom, because Mr. Melancon was choking and needed to be suctioned. He resigned from his position at the nursing home because he believed that to protect himself, another orderly or nurse's aide would have to be present with him each and every time he went into a female resident's room.
The defendant repeatedly emphasized to the jury that although Ms. Guillory testified that she did not tell Joanne Freeman about the incident until some time after 1:15 p.m., Ms. Allison testified that Emily Joseph reported the incident to her between 12:45 and 1:00 p.m. This discrepancy forms the basis for the defendant's argument, both in the trial court and on appeal, that the incident could not have happened in the manner testified to by Ms. Guillory.
The defendant also attempted to paint Ms. Guillory, the only witness to the alleged incident, as an untruthful person in her everyday life. In particular, the defendant focused on Ms. Guillory's involvement with the Family Day Care Home Program,[3] administered locally by the Acadia-Vermillion Community *959 Action Program (AVCAP) and sponsored by the Louisiana Department of Education. AVCAP terminated Ms. Guillory's participation in the program for falsifying her employer's signature on the enrollment form and for providing erroneous information regarding her days and hours of employment. The defendant contends in brief that this testimony cast suspicion on Ms. Guillory's veracity and should have left doubt in the jury's mind that her version of the incident was correct.
Where there is conflicting testimony about a factual matter, the resolution of which depends upon a credibility determination, this is a matter of the weight of the evidence, not its sufficiency. See Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A determination of the weight to be given to a piece of evidence or to a witness' testimony is exclusively the province of the fact finder and, in a criminal case, may not be reviewed on appeal. LSA-Const. Art. V, § 10(B) (1974). We therefore conclude that the evidence presented by the State, considered as a whole and in a light most favorable to the prosecution, was sufficient for a reasonable jury to find that the defendant intentionally touched the genitals of the victim, Rita Miller, without her consent.
This assignment of error is without merit.

ERRORS PATENT
Pursuant to LSA-C.Cr.P. Art. 920, we have carefully examined the record for errors patent, and note that at sentencing, the defendant was not advised of the prescriptive period for post-conviction relief as required by LSA-C.Cr.P. Art. 930.8. This defect has no bearing on whether the sentence is excessive and is not grounds to reverse the sentence or remand the case for resentencing. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Arts. 914 or 922, so prescription is not yet running. Apparently, the purpose of the notice of Article 930.8(C) is to inform the defendant of the prescriptive period in advance; thus, the district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof in the record of the proceedings that the defendant received the notice. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.), writ denied, 623 So.2d 1334 (La.1993).
AFFIRMED, WITH INSTRUCTIONS.
NOTES
[1] Rita Miller's chronological age is 59; her mental age is approximately that of a two year old. She has been confined to a nursing home since she was eighteen.
[2] Joanne Freeman was not called to testify at trial.
[3] The program pays day care home providers for meals which are served to children while the parent is working or in school.