NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-454

STATE OF LOUISIANA

VERSUS

DAMON LEE HARMON

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 5001-06
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.[*], Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**John Foster DeRosier**
**District Attorney–14th Judicial District Court**
**Carla S. Sigler**
**Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, LA 70601**
**(337) 437-3400**
**Counsel for Appellee:**
**State of Louisiana**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**Counsel for Defendant/Appellant:**
**Damon Lee Harmon**

**SAUNDERS, Judge.**

The Defendant, Damon Lee Harmon, was charged by bill of information filed on February 23, 2006, with armed robbery with a firearm, in violation of La.R.S. 14:64.3. The Defendant entered a plea of not guilty on March 1, 2006.

Jury selection commenced on January 23, 2007, and the Defendant was found guilty of armed robbery on January 26, 2007. On February 22, 2007, the Defendant was sentenced to twenty-five years in the custody of the Louisiana Department of Corrections, to be served without benefit of probation, parole, or suspension of sentence. A Motion to Reconsider Sentence was filed on February 28, 2007, and denied by the trial court on March 6, 2007. A second Motion to Reconsider Sentence was filed on September 17, 2007, and denied on September 24, 2007.

A Motion and Order for Out of Time Appeal was filed on September 17, 2007, and subsequently granted. The Defendant is now before this court asserting four assignments of error. Therein, the Defendant contends that the State failed to provide plausible race-neutral reasons for peremptory challenges used on black jurors, that the State failed to prove his identity as the perpetrator, that his sentence is excessive, and that he did not receive effective assistance of counsel. The Defendant's sentencing claim will not be considered, as we vacated due to an error patent. Additionally, the State gave plausible race-neutral reasons for the use of peremptory challenges and proved the Defendant's identity as the perpetrator. Finally, some of the Defendant's claims of ineffective assistance of counsel are relegated to post-conviction relief, and the remainder lack merit.

**FACTS:**

Ronald Fontenot testified that he was employed at the StepIn Exxon on November 9, 2005. On that date, a man with a gun robbed the store. Fontenot

described the man as a short, black man, who had a scar on his face. He also told police the man wore a black hooded sweatshirt. Fontenot was subsequently shown two photographic line-ups and was unable to identify anyone.

Fontenot further testified that the man who robbed the store returned on December 23, 2005. At that time, Fontenot retrieved a gun he had brought to work with him. Fontenot locked the door at the south end of the store, but the man escaped through the door located at the north end of the store and got into a car with a female. Fontenot followed the car the man entered, but subsequently returned to the store and called 911. When police arrived at the store, Fontenot told them the man who had previously robbed the store had just been there. The female with whom the man left then returned to the store and told police the man that was with her was Damon Thomas and gave the police his address.[**] Detective Gregory Single went to the address given for Damon Thomas. Once there, he was told by the occupant of the home that the person he was looking for may be Damon Harmon and was given a second address.

On January 6, 2006, Fontenot identified the Defendant, Damon Harmon, in a photographic line-up. After Fontenot identified the Defendant, Detective Single prepared an arrest warrant for the Defendant and a search warrant for the residence located at the second address. During the search, police found three hooded sweatshirts similar to that described by Fontenot. Fontenot testified that the sweatshirt marked as State's Exhibit 8 looked like the exact sweatshirt the perpetrator wore when he robbed the store.

---

[**]Jonathan Verette, a former employee of the Lake Charles Police Department, testified that he responded to the StepIn Exxon on December 23, 2005. He questioned the female that had returned to the store, but did not ask her name.

2

April Garrick, the Defendant's fiancé, testified that she and the Defendant were in Baton Rouge on November 9, 2005. The Defendant denied committing the offense and testified that he was in Baton Rouge on November 9, 2005. The Defendant also informed police that his cousin Marlin Harmon may have committed the offense.

Detective Single testified that he pulled Marlin's criminal history and his photograph. Detective Single further testified that the original suspect description was a male five feet to five feet five inches tall, twenty to twenty-five years of age, weighing one hundred twenty-five to one hundred fifty pounds. Marlin was listed as being five feet six to seven inches tall, a bit heavier, and approximately ten years older than the suspect. Detective Single then testified that he did not see a resemblance between Marlin and the Defendant. Detective Single testified that the Defendant weighed one hundred twenty to twenty-five pounds at the time of his arrest and was five feet two inches tall.

Finally, at trial, Fontenot made an in-court identification of the Defendant as the person who robbed him.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent, one which requires the sentence to be vacated, and the matter remanded to the trial court for resentencing.

There is an error in the bill of indictment. Louisiana Code of Criminal Procedure Article 464 states:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or

3

its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

The bill of indictment provides that the Defendant, around November 9, 2005, committed armed robbery with a firearm "violating LSA R.S. 14:64.3, in that HE WHILE ARMED WITH A DANGEROUS WEAPON, TO WIT: A FIREARM, ROBBED RONALD FONTENOT . . . ."

The bill fails to include a citation for the charge of armed robbery, a violation of La.R.S. 14:64. Nevertheless, the Defendant was clearly informed in the bill that he was charged with armed robbery with a firearm of the named victim. Additionally, there is nothing on the face of the record indicating this error misled the Defendant to his prejudice, and neither the minutes nor the pleadings indicate the Defendant alleges any prejudice prior to trial. Accordingly, we find this error to be harmless. *See State v. Poche*, 05-1042 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225 and *State v. Roberts*, 07-362 (La.App. 3 Cir. 1/17/07), 947 So.2d 208, *writ denied*, 06-765 (La. 10/5/07), 964 So.2d 938.

Additionally, there is an error patent regarding the penalty imposed by the trial court. At the time the Defendant committed the offense of armed robbery with use of a firearm, La.R.S. 14:64.3(A) provided:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

At the sentencing hearing, the trial court explained that the penalty for armed robbery was ten to ninety-nine years at hard labor, and with the enhancement of

4

La.R.S. 14:64.3, an additional five years was to be added to the sentence that is imposed. The trial court sentenced the Defendant as follows:

> At this time the defendant has been found guilty of armed robbery involving a firearm, violations of 14:64 and 14:64.3.

> At this time the defendant, . . . is hereby ordered to serve 25 years with the Department of Corrections. Said sentence is to be served without benefit of probation, parole or suspension of sentences [sic] or execution.

We find that the trial court failed to specify what portion, if any, of the Defendant's twenty-five year hard labor sentence, imposed for the conviction of armed robbery with use of a firearm, included the enhanced penalty of La.R.S. 14:64.3.

Recently, this court addressed a similar issue in *State v. McGinnis*, 07-1419, pp.8-9 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, 888-89, explaining, in pertinent part:

> The trial court did not specify what portion, if any, of the Defendant's habitual offender fifty-year hard labor sentence, imposed for the conviction of armed robbery with use of a firearm, included the enhanced penalty of La.R.S. 14:64.3. . . .

> . . .

> In *State v. King*, 06-1903 (La.10/16/07), 969 So.2d 1228, the supreme court held that a defendant convicted of armed robbery and sentenced under the habitual offender law can be sentenced to an additional five years under La.R.S. 14:64.3, when the dangerous weapon used is a firearm.

> In *State v. White*, 42,725 (La.App. 2 Cir. 10/24/07), 968 So.2d 901, the defendant was convicted of two counts of armed robbery with a firearm, and sentenced to thirty years at hard labor without benefit of parole, probation, or suspension of sentence on each count to run concurrently. On error patent review, the court noted that the trial court did not specify what portion, if any, of the defendant's thirty-five year hard labor sentence without benefits was imposed under La.R.S. 14:64.3. The court found that the absence of a specification that the defendant's sentences included a term under La.R.S. 14:64.3, rendered the defendant's sentence indeterminate. Therefore, the court vacated the sentences and remanded for resentencing according to law for

5

clarification of whether the defendant's sentences included any additional punishment under La.R.S. 14:64.3.

> This court finds that the absence of a specification that the Defendant's habitual offender sentence included an enhanced term of imprisonment under La.R.S. 14:64.3 renders this sentence indeterminate. Therefore, this court hereby vacates the habitual offender sentence and remands for resentencing in accordance with La.R.S. 15:529.1 and 14:64.3. The trial court should clearly set forth the portion of the sentence enhanced under La.R.S. 14:64.3. Additionally, the court instructs the trial court that the portion of the sentence enhanced under La.R.S. 14:64.3 is not to be served at hard labor. *See State v. Wardsworth*, 04-1572 (La.App. 3 Cir. 5/25/05), 904 So.2d 65.

Consequently, we find that the absence of a specification that the Defendant's twenty-five year sentence included an enhanced term of imprisonment under La.R.S. 14:64.3 renders his sentence indeterminate. Therefore, we will vacate the sentence and remand the matter for resentencing in accordance with La.R.S. 14:64 and 14:64.3. The trial court should clearly set forth the portion of the sentence enhanced under La.R.S. 14:64.3. Additionally, we instruct the trial court that the portion of the sentence enhanced under La.R.S. 14:64.3 is not to be served at hard labor. *See Wardsworth*, 904 So.2d 65.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, the Defendant contends that the State failed to negate the probability of misidentification and, thus, failed to prove his identity as the perpetrator beyond a reasonable doubt. As this assignment of error concerns the sufficiency of the evidence, we will address this issue before the Defendant's first assignment of error. *See State v. Hearold*, 603 So.2d 731 (La.1992).

The Defendant does not dispute that an armed robbery occurred. However, he asserts the evidence was insufficient to prove he committed the offense.

> [W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate

6

> any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La.6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988).

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051.

Moreover, "[i]dentification by a single witness may support a conviction despite considerable alibi testimony. *State in the Interest of Johnson*, 461 So.2d 551 (La.App. 3 Cir.1984); *State v. Brian*, 502 So.2d 293 (La.App. 3 Cir.1987)." *State v. Henry*, 95-428, p. 6 (La.App. 3 Cir. 10/4/95), 663 So.2d 309, 311, *writ denied*, 96-681 (La. 5/16/97), 693 So.2d 793.

In brief to this court, the Defendant argues that the State failed to negate the reasonable probability of misidentification. He asserts there was no physical evidence linking him to the crime, as no money or weapon was recovered. The "similar" hooded sweatshirt recovered by police from the Defendant's residence could be found in the closet of most young men and women and was not linked to the crime. Additionally, surveillance cameras at the store were not working, no fingerprint evidence was available, and the palm print that was found was unusable for identification.[***] Furthermore, the Defendant and Garrick testified that they were on a trip on the date of the offense. The Defendant further asserts that he told police that his cousin Marlin Harmon may have committed the offense and no photographic line-up presented to Fontenot contained a photograph of Marlin.

The Defendant asserts that the totality of the circumstances must be considered when determining whether there is a substantial likelihood of misidentification in

---

[***]Fontenot testified that after Hurricane Rita, the store's video surveillance equipment was not working properly. No fingerprints were recovered from the scene on the date of the robbery. However, a palm print was recovered. The print did not match that of the Defendant.

7

addition to a suggestive identification procedure. The Defendant asserts the following factors must be considered: 1) the witness' opportunity to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Based on these factors, the Defendant asserts the likelihood of misidentification was present in the case at bar.

We will not specifically address the five factors set forth by the Defendant in his brief because the Defendant is not attacking the identification procedures used in this case and does not specifically allege that the identification was suggestive. Additionally, the Defendant did not file a motion to suppress the photographic identification and did not object to either the photo-lineup when it was introduced at trial or Fontenot's in-court identification of him at trial.

However, we do find that the Defendant's contention lacks merit. At the time of the offense, Fontenot recognized the perpetrator as a past store customer. He was certain of this fact and remembered helping the perpetrator select oil for his car. Moreover, Fontenot recognized the scar on the perpetrator's face and relayed this information to police, recognized him several weeks later when he returned to the store, identified the Defendant as the person who robbed the store, and also made an in-court identification of the Defendant as the man who robbed the store.

Second, the Defendant relied on alibi testimony to assert insufficiency of the evidence in this case. The Defendant and his girlfriend, Garrick, testified that he was in Baton Rouge on the date of the offense. Thus, credibility is at issue.

> Where conflicting testimony exists, calling for a determination
> of credibility of the witness is a matter of weight of the evidence and not

8

its sufficiency. *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. *State v. Nolan*, 503 So.2d 1186 (La.App. 3 Cir.), *writ denied*, 507 So.2d 226 (La.1987).

*State v. Leger*, 04-1467, p. 19 (La.App. 3 Cir. 6/1/05), 907 So.2d 739, 754, *writ denied*, 05-2263 (La. 4/17/06), 926 So.2d 509, *cert. denied*, __ U.S. __, 127 S.Ct. 245 (2006) (quoting *State v. Duncan*, 93-1384, p. 8 (La.App. 3 Cir. 4/6/94), 635 So.2d 653, 657, *writ denied*, 94-1067 (La. 10/28/94), 644 So.2d 649).

"A determination of the weight to be given to a piece of evidence or to a witness' testimony is exclusively the province of the fact finder and, in a criminal case, may not be reviewed on appeal. LSA-Const. Art. V, § 10(B) (1974)." *State v. Taylor*, 94-1072, p. 6 (La.App. 3 Cir. 3/8/95), 651 So.2d 955, 959.

The jury's verdict clearly indicates it chose to believe Fontenot's testimony over that of Garrick and the Defendant. That credibility determination should not be second-guessed by this court. Accordingly, we find that the evidence presented by the State, considered as a whole, and in a light most favorable to the prosecution, was sufficient for a reasonable jury to conclude that the Defendant committed the offense at issue herein.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, the Defendant contends the trial court erred in that the prosecutor failed to provide plausible race-neutral reasons for her peremptory challenges to all black jurors in the venire.

The fifth circuit recently discussed the state of the law regarding *Batson* challenges in *State v. Cheatteam*, 07-272, pp. 4-5 (La.App. 5 Cir. 5/27/08), 986 So.2d 738, 743-44, as follows:

9

The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the United States Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges of a prospective juror were based on race. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. *Batson*, 106 S.Ct. at 1723. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Batson*, 106 S.Ct. at 1723-24. This second step "does not demand an explanation that is persuasive or even plausible," as long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has established purposeful discrimination. *Batson*, 106 S.Ct. at 1724. It is at this third step that implausible explanations offered by the prosecution "may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem*, 115 S.Ct. at 1771. "[A] trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, ---U.S. ----, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008), *citing Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991).

The Supreme Court later affirmed and applied the three-part test in *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005), and, most recently, in *Snyder v. Louisiana*, *supra*. In *Miller-El*, the Supreme Court emphasized the trial judge's responsibility to assess the plausibility of the prosecutor's proffered race-neutral reason "in light of all evidence with a bearing on it." *Miller-El*, 125 S.Ct. at 2331. The Supreme Court further stated:

> A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.

*Miller-El*, 125 S.Ct. at 2332.

In its most recent case, *Snyder v. Louisiana*, *supra,* the Supreme Court again emphasized that the plausibility of the prosecutor's explanation for a peremptory strike is to be carefully scrutinized by the trial judge under the third step of the *Batson* inquiry and noted that implausible reasons will fail a *Batson* challenge. In discussing the third step of the *Batson* inquiry in *Snyder*, the Supreme Court stressed the trial judge's pivotal role in determining the plausibility of the state's

race-neutral explanation. The Supreme Court explained that the third step requires the trial court to evaluate the prosecutor's credibility by assessing "not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder v. Louisiana*, ---U.S. ----, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008).

Referencing its earlier decision in *Miller-El*, the Supreme Court again stressed that "all of the circumstances that bear upon the issue of racial animosity must be consulted" in determining whether the explanation given for the strike is convincingly race-neutral. *Snyder v. Louisiana*, *supra* at 1208. When the record does not support the prosecutor's proffered explanation or shows the proffered explanation to be implausible, there is an inference of discriminatory intent that sufficiently demonstrates a *Batson* violation. *Id.* at 1212.

The Defendant asserts the State did not give plausible race-neutral reasons for the exclusion of three black jurors, Tommie White, Jr., Derrick Wheeler, and Betty Rigmaiden. The State exercised peremptory challenges to excuse White, Wheeler, and Rigmaiden.

During questioning of potential jurors, White was asked if he could think of anything that would interfere with his service, and he responded, "I really wouldn't want to serve." The State then mentioned that it was looking at White's body language. White subsequently stated that if selected he would do his duty as a juror and return a verdict according to the evidence. However he stated that, "he would prefer not to."

Wheeler informed the trial court that on the previous day he forgot to inform the parties that he went to high school with the Defendant's cousin or aunt. Additionally, the Defendant's sister or aunt was his wife's hairdresser. Wheeler stated that he would feel uncomfortable making a decision in this case. Wheeler later indicated that he thought the Defendant's aunt worked at the Isle of Capri, where he and his wife had both previously worked. Wheeler then stated he could return a

11

guilty verdict if the State did its job at trial. Wheeler subsequently indicated that he would rather not serve on the jury, but agreed, if called upon to do so, he would do it.

Rigmaiden indicated that in the past, a TV and VCR had been stolen from her customized van. Rigmaiden further informed the State that her son had spent two years in prison for drugs; however, that would not affect her ability to serve on the jury, and any animosity she felt was directed toward her son. She further informed the parties that her son-in-law worked in internal affairs, and her ex-son-in-law worked for the sheriff's department. Additionally, Rigmaiden's sister worked at the court of appeal. Rigmaiden stated that these things would not affect her in any way.

After the State used a peremptory strike against Rigmaiden, defense counsel objected, stating there had only been two black persons on the jury, and the State exercised peremptory challenges on both of them. Defense counsel asserted he thought a *Batson* challenge was in order. The State then admitted that it had struck three black jurors and stated that it did not mind articulating reasons for the challenges. The State then informed the trial court of the following:

> As to Mr. White, Mr. White's body language demonstrated to me that I would have to work harder with him. I spent a lot of time questioning him about his reluctance to serve. He said that this was a very difficult decision for him to have to be in; he'd rather not be in that. I questioned him because I thought he was actually going to be a cause challenge for his inability to be able to make a decision in this case. When we talked about the severity of the crime, his body language demonstrated to me that I think he was trying to be honest with me, but he would not be capable of returning a verdict of guilty in an armed robbery case. He also never maintained eye contact with me, which caused me to not think that his motives were elicit or anything negative, just that he just couldn't follow the law as given to him, and this circumstance, and would not be able to return a verdict of guilty.

12

As to Mr. Wheeler, I had great concerns when he talked about his difficulty because of the family members that he recognized outside of court. He brought all that information to the Court voluntarily. I actually really did like Mr. Wheeler as a potential juror because he talked about what's right is right and what's wrong is wrong, but then he also talked about the aunt of this defendant being the hairdresser for his wife and those connections to the family. He had gone to junior high school, I think, with another aunt. He talked about his knowledge of the family, how difficult it would be to return a verdict in a case where he knew all the players involved, and the State had grave concerns, given that working knowledge. The State is also aware that this defendant's aunt works at the Isle of Capri, or at least she did at the time that she met with me a few months ago to discuss this case with me. . . . But if I recall correctly, he worked at the Isle of Capri for approximately six years, and so did his wife. When I asked him about whether or not he knew the defendant's aunt that worked at the Isle of Capri, he mentioned, "Well, I don't think she's still there." So I questioned what the relationship with this defendant's family is, and I was very concerned that the State would not receive a fair trial with that kind of friend [sic], familiar type relationship Mr. Wheeler has with the family of this defendant.

As to Ms. Rigmaiden; I really like Ms. Rigmaiden. I think she's a very sweet lady. I prosecuted her son, Mark Rigmaiden . . . . I've had contact with her daughters, especially, the daughter who is married to Corporal Franklin Fondel, with the Lake Charles Police Department, was concerned that she was not revealing that information. I think that she is aware of the fact that at least there was a black female prosecutor and the family was asking me for more of a break than I was willing to give. And I have concerns about whether or not that would surface and not give the State a fair trial in this case.

I would also like to state for the record that I am an African-American prosecutor. I would never strike someone solely because they are not jurors -- if you look at my history of juries, most of my juries -- jurors have been African-American people. I actually prefer them as jurors, not for race reasons, just because I think we, as a culture, are logically-thinking people, and we're quite sick of crime in our neighborhoods.

Defense counsel argued that White said he "did not want to do this," but he "would do it if he had to." Defense counsel further argued that White's answer was in line with that of other potential jurors, and body language did not seem like a sufficient ground. As to Wheeler, defense counsel argued that he stated he knew

members of the Defendant's family, and this may make him uncomfortable, but he could "do this." Defense counsel then asserted there was no indication that Rigmaiden knew the prosecutor and did not demonstrate that she had any animosity against the law. Defense counsel argued that the race-neutral reasons asserted by the State were not sufficient.

The trial court stated that White "clearly indicated" he did not want to serve, and it was apparent that he did not want to be a juror. Regarding Wheeler, the trial court stated the following:

> Mr. Wheeler is clearly the most obvious -- well, after he was -- overnight, he came back and had significant concerns. He seemed somewhat vague on the work relationship, but apparently -- and there was some discussion possibly with his wife with regard to the parties that he had seen, and there was some significant [sic] concerning him being in that position to have to make a decision, and he did not want to be present.

The trial court then stated that it felt Rigmaiden may have had animosity toward the State because her son was prosecuted. Finally, the trial court then denied defense counsel's *Batson* challenge.

The Defendant argues that the State did not make a specific showing regarding White's body language and merely stated a conclusion. Therefore, the record did not support the challenge as to White. In support of his argument, the Defendant cites *State v. Ball*, 32,497 (La.App. 2 Cir. 12/15/99), 748 So.2d 1239, *writ denied*, 00-385 (La. 10/6/00), 770 So.2d 360. The Defendant's reliance on *Ball* is misguided.

Moreover, in *State v. Rose*, 606 So.2d 845, 850 (La.App. 2 Cir. 1992), the second circuit stated that "[a] perceived lack of interest . . . is an acceptable, racially neutral reason for exercising a peremptory challenge." Based on *Rose*, we find that

14

the State's reason for challenging White, asserting he was reluctant to serve, was race-neutral.

Further, the trial court did not mention body language when making its ruling. As such, we cannot presume that the trial court credited the State's assertion regarding White's body language. *See Snyder*, 128 S.Ct. at 1209. Rather, it is clear from the record that the trial court made a determination on the issue of discriminatory intent regarding White based on all facts and circumstances presented, and we cannot say that determination was clearly erroneous.

We also find that the State's challenge to Wheeler was race-neutral. In *State v. Parker*, 27,417 (La.App. 2 Cir. 9/27/95), 661 So.2d 603, *writ denied*, 95-2576 (La. 2/16/6), 667 So.2d 1049, the second circuit found that jurors' knowledge of the family of the victim and the defendant was a well-established race-independent ground for exercising a peremptory challenge. As such, we cannot find that the trial court's determination on the issue of discriminatory intent regarding Wheeler was clearly erroneous.

Finally, we also find that the State's challenge to Rigmaiden was race-neutral. In *State v. Scott*, 04-1312, p. 6 (La. 1/19/06), 921 So.2d 904, 946, *overruled on other grounds by State v. Dunn*, 07-878 (La. 1/25/08), 974 So.2d 658, the supreme court stated:

> This court has previously considered the fact that a family member is a convicted criminal a racially-neutral reason for excluding a prospective juror. See *State v. Tilley*, 99-0569, p. 4 (La.7/6/00), 767 So.2d 6, 18 (one venirewoman had two sons with felony convictions); *State v. Lindsey*, 543 So.2d 886 (La.1989). Federal courts have also approved as race-neutral challenges of prospective jurors whose family members have been in trouble with the law. See *United States v. Yankton*, 986 F.2d 1225, 1231 (8th Cir.1993) (venireman's brother had criminal record).

15

As such, we cannot say, based on *Scott*, that the trial court's determination on the issue of discriminatory intent regarding Rigmaiden was clearly erroneous.

The Defendant asserts the responses of White, Wheeler, and Rigmaiden were consistent with responses given by other prospective jurors, but points to no specific potential jurors and has not made any specific references to the record regarding other potential jurors. As such, we find that the Defendant has not proven his contention.

Finally, the Defendant asserts that the State's removal of Rigmaiden was explicit in its inclusion of race. The Defendant further asserts that Rigmaiden would not have been excused but for her race, as the State noted its concern over the role of a black female prosecutor. The Defendant contends that Rigmaiden was kept off the jury because the State had a concern that she would consider the race of the prosecutor an important factor in how a prior case was handled.

We do not interpret the State's comments in the same manner the Defendant did. Rather, we find that the assertion by the prosecutor indicated a concern that Rigmaiden may determine she was the prosecutor who handled the case involving Rigmaiden's son. Accordingly, for the reasons asserted herein, we find that this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO 3:

In his third assignment of error, the Defendant contends the twenty-five year sentence is excessive for this young first offender.

We have ruled that the Defendant's sentence be vacated due to an error patent. Thus, we will not address this Assignment of Error.

## ASSIGNMENT OF ERROR NO. 4:

In his fourth assignment of error, the Defendant contends he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment, which prevented him from receiving a fair trial.

The Defendant asserts the following claims of ineffective assistance of counsel:

1) a civil burden of proof was articulated by defense counsel to the jury during opening statements;

2) defense counsel did not submit a special jury instruction on the burden of proof regarding identification;

3) defense counsel did not object to the trial court's jury instructions, which did not include the State's burden of proof as it relates to identification/misidentification;

4) defense counsel failed to object to other crimes evidence regarding the Defendant's use

5) defense counsel asked the Defendant if he was incarcerated at the time of trial;

6) there was no objection to the State soliciting booking information;

7) defense counsel asked the Defendant if he could have pled guilty to a lesser offense;

8) Garrick's phone records were not subpoenaed;

9) no motion to suppress identification was filed and there was no objection to the introduction of the photographic line-up at trial;

10) defense counsel did not seek pre-trial testing of the palm print found at the store;

11) defense counsel did not seek a continuance when the State sought testing of the palm print at the beginning of trial, despite the Defendant's having expressed his desire to have the testing done and his request for a new attorney;

12) defense counsel did not object to Detective Single's opinion testimony regarding the Defendant's resemblance to Marlin;

13) defense counsel did not conduct an investigation regarding Marlin or issue subpoenas for this possible defense;

17

14) defense counsel did not object when Fontenot testified that Garrick told him she believed the Defendant committed the offense; and

15) the Defendant's lack of contact with defense counsel.

In *State v. Matthis*, 07-691, p. 7 (La. 11/2/07), 970 So.2d 505, 509, the supreme court discussed ineffective assistance of counsel as follows:

[T]he standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in *State v. Washington*, 491 So.2d 1337, 1339 (La.1986), requires respondent to show not only that his trial attorney's performance fell below an objective standard of reasonableness under prevailing professional norms but also that counsel's inadequate performance prejudiced him to the extent that the trial was rendered unfair and the verdict suspect, *i.e.* that counsel's errors undermined the proper functioning of the adversary process.

In *State v. Duplichan*, 06-852, p. 9 (La.App. 3 Cir. 12/6/06), 945 So.2d 170, 177, *writ denied*, 07-148 (La. 9/28/07), 964 So.2d 351, this court stated the following:

[T]his court often defers such claims to the post-conviction process, so the record can be developed in regard to the issue at hand. However, this court will address ineffective assistance claims on appeal, when the record is sufficient to analyze the claim. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La.9/21/01), 797 So.2d 62.

Opening Statement

During his opening statement, defense counsel told the jury that the Defendant was presumed innocent until the State proved by a preponderance of the evidence that he committed the offense. While defense counsel's remarks were incorrect, the Defendant cannot prove that he was prejudiced by defense counsel's remarks. The trial court, during its final instructions to the jury, stated that the Defendant was presumed innocent until each element of the offense was proven beyond a reasonable doubt and defined that term for the jury. Thus, the Defendant failed to meet his burden of proof regarding this claim.

18

Jury Instruction

The Defendant contends defense counsel was ineffective for failing to submit a special jury instruction regarding the burden of proof in cases concerning issues of identification/misidentification and in failing to object to the trial court's failure to include such an instruction in the final jury instructions. We do not agree.

A review of the record indicates that defense counsel did not request a special jury instruction regarding identity. However, in its instructions to the jury, the trial court informed the jury that the State was required to prove, beyond a reasonable doubt, that the "alleged offense was committed by Damon Lee Harmon, the person named in the bill of information and on trial in this case." This instruction did alert the jury to the issue regarding identity.

Moreover, in brief to this court, the Defendant has not set forth the substance of the special jury instruction that defense counsel should have requested. Accordingly, as the Defendant has not sufficiently briefed this issue, we relegate this claim to post-conviction relief.

Other Crimes Evidence

Fontenot testified that when the Defendant entered the store on December 23, 2005, the Defendant stated he was on "wet" on the day of the robbery. Fontenot further testified that "wet" is a marijuana cigarette dipped in formaldehyde. Defense counsel did not object to this testimony, and the Defendant argues this constituted ineffective assistance of counsel.

The erroneous admission of other crimes evidence is subject to harmless-error analysis. *See State v. Blank*, 04-204 (La. 4/11/07) 955 So.2d 90, *cert. denied*, __ U.S. __, 128 S.Ct. 494 (2007).

19

We find that this evidence was harmless. Even if defense counsel's failure to object to the admission of other crimes evidence constituted deficient performance, the record does not show that, but for defense counsel's failure to object to this evidence, the outcome of the Defendant's trial would have been different. *See* Assignment of Error No. 2. Therefore, the Defendant did not prove prejudice as required by *Strickland*, 466 U.S. 668. Accordingly, the Defendant has failed to prove his claim of ineffective assistance of counsel on this issue.

Defendant's Incarceration

During the Defendant's testimony, defense counsel asked the Defendant if he was incarcerated at that time. The Defendant asserts that such questioning amounts to ineffective assistance of counsel.

We find that the record before the court is insufficient to rule on the Defendant's claim. Accordingly, this claim should be relegated to post-conviction relief.

Booking Information

The Defendant asserts that defense counsel's failure to object to the State's solicitation of booking information constituted ineffective assistance of counsel. In support of this claim, the Defendant cites to record page 877. There is no testimony on that page of the record. Thus, this issue was improperly briefed. As such, it is regulated to post-conviction relief.

Plea Offer

During the Defendant's testimony, defense counsel asked the Defendant if he was aware that he could have pled guilty to a lesser offense and avoided going to trial. The Defendant asserts this amounted to ineffective assistance of counsel.

> It is well settled that decisions relating to investigation, preparation, and strategy require an evidentiary hearing and cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated.

*State v. Smith*, 06-820, pp. 17-18 (La.App.1 Cir. 12/28/06), 952 So.2d 1, 12, *writ denied*, 07-211 (La. 9/28/07), 964 So.2d 352 (citation omitted).

We find that defense counsel's questioning may have amounted to trial strategy. Thus, the record before the court is insufficient to rule on the Defendant's claim. Accordingly, this claim is relegated to post-conviction relief.

Phone Records

Garrick testified that Fontenot called her four times. However, her phone records were not introduced at trial. The Defendant asserts defense counsel was ineffective for failing to subpoena Garrick's phone records. Decisions relating to investigation and preparation require an evidentiary hearing. Thus, this claim is relegated to post-conviction relief. *See Smith*, 952 So.2d 1.

Photographic Line-Up

The Defendant asserts defense counsel was ineffective for failing to file a motion to suppress the photographic line-up and failing to object to the introduction of the line-up at trial.

The record shows that defense counsel did not file a motion to suppress the identification. "For purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in futility." *State v. Pendelton*, 96-367, p. 23 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, 156, *writ denied*, 97-1714 (La. 12/19/97), 706 So.2d 450 (citation omitted).

21

Again, the record before the court is insufficient to rule on the Defendant's claim. Accordingly, this claim is also relegated to post-conviction relief where an evidentiary hearing can be had.

Palm Print

The Defendant asserts that defense counsel was ineffective because he did not seek pre-trial testing of a palm print found at the store. The State had the palm print at issue tested on the date testimony began. The print did not match that of the Defendant. As the print did not match that of the Defendant, he cannot prove he was prejudiced by said testing, or lack thereof.

Continuance

The Defendant asserts that defense counsel was ineffective in that he did not seek a continuance when the State sought to have the palm print tested at the time trial began, despite the Defendant's having expressed his desire to have the testing done and his request for a new attorney. The palm print at issue did not match that of the Defendant; therefore, the Defendant cannot prove he was prejudiced by defense counsel's failure to request a continuance. Furthermore, the trial court indicated, when discussing the possibility of the Defendant hiring new counsel, that, even if he were to get new counsel, the matter would proceed to trial as scheduled.

Opinion Testimony Regarding Marlin

The Defendant asserts that defense counsel was ineffective for failing to object to Detective Single's opinion testimony regarding the Defendant's resemblance to Marlin.

As we stated in the facts above, when the Defendant was questioned by police, he informed Detective Single that his cousin, Marlin Harmon, may have committed

22

the offense. Detective Single testified that he reviewed Marlin's criminal history and his photograph. Detective Single further testified that the original suspect's description was a male, five feet to five feet five inches tall, twenty to twenty-five years of age, weighing one hundred twenty-five to one hundred fifty pounds. Detective Single testified that Marlin was listed as being five feet six to seven inches tall, was a bit heavier than the suspect, and was approximately ten years older than the suspect. Detective Single then testified that he did not see a resemblance between Marlin and the Defendant.

In *State v. Jefferson*, 04-1960 (La.App. 4 Cir. 12/21/05), 922 So.2d 577, *writ denied*, 06-940 (La. 10/27/06), 939 So.2d 1276, the defendant argued that the trial court erred in qualifying a detective as an expert in voice analysis. This argument was based on the trial court's overruling of defense counsel's objection to the detective identifying the voice of a witness when a 911 recording was played at trial.

The fourth circuit set forth the following:

> La. C.E. art. 701 permits a lay witness to testify in the form of opinions or inferences as long as those opinions or inferences satisfy two requirements: (i) the opinions are rationally based on the perception of the witness, and (ii) they are helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

> By way of example, in *State v. Davis*, 2000-0275 (La.App. 4 Cir. 2/14/01), 781 So.2d 633, we found La. C.E. art. 701 applied to allow a cash management supervisor to identify a defendant's handwriting. In that case, the defendant was charged with theft of cash payments received by him from patients during the course of his employment as a supervisor of bank transactions at LSU Medical Center ("LSU"). LSU's cash management supervisor identified the defendant's handwriting on a document admitted into evidence. On appeal, the defendant raised a claim of ineffective assistance of counsel because defense counsel failed to object to that handwriting identification testimony on the ground that the managing supervisor had not been qualified as an expert in handwriting analysis. Rejecting that claim, we cited La. C.E. art. 701. We reasoned that the managing supervisor's identification of the defendant's handwriting was rationally based upon

23

her personal observations of the defendant's handwriting. We also noted that the defendant had admitted that the signature on the document was his.

*Id*. at 597.

In *Jefferson*, the detective testified that he was able to recognize the witness' voice based on the time he spent with him. During his investigation of the shooting, the detective had interviewed the witness at police headquarters in August 2001; that interview was recorded. During the week of the trial, the detective located the witness and had a lengthy meeting with him. The detective testified that at the meeting he played the witness the tape from their August 2001 interview and the 911 tape of the witness' call to police on the morning of the shooting. Although the witness agreed to testify at trial, he failed to appear. The fourth circuit found that, given the circumstances, the record supported the trial court's apparent conclusion that both of the requirements of La.Code Evid. art. 701 were satisfied.

Based on the fourth circuit's decision in *Jefferson*, we find that Detective Single's testimony was admissible. Accordingly, defense counsel was not ineffective for failing to object to that testimony.

Failure to Investigate Marlin

The Defendant asserts defense counsel did not conduct an investigation regarding Marlin and did not issue subpoenas for a possible defense.

We find that decisions relating to investigation require an evidentiary hearing and cannot possibly be reviewed on appeal. Thus, this claim is relegated to post-conviction relief. *See Smith*, 952 So.2d 1.

Fontenot's Testimony

24

The Defendant asserts defense counsel was ineffective in that he failed to object to Fontenot's testimony that Garrick said that she believed the Defendant committed the offense.

Fontenot testified that a woman came into the store to discuss the robbery and told him, "now I don't know who to believe, because I was believing he didn't do it, but now I believe he did it." Defense counsel did not object to this testimony.

The Defendant did not assert, in brief to this court, the basis for an objection by defense counsel. Therefore, we find that this issue has not been properly briefed and find that the record before the court is insufficient to rule on the Defendant's claim. As such, we regulate the issue to post-conviction relief.

Contact With Defense Counsel

The Defendant asserts defense counsel was ineffective due to his lack of communication with the Defendant. On January 24, 2007, the Defendant addressed the trial court. He stated that he had been incarcerated for thirteen months, and "I ain't never talked to nobody." The Defendant then stated, "he come at me with a plea" and said if the plea was not accepted, the trial would begin the next day. The Defendant then informed the trial court that his family had obtained the money to hire an attorney. The trial court subsequently informed the Defendant that if the attorney could start selecting the jury that day, the hiring of a new attorney was fine.

Defense counsel was outside the courtroom when this occurred. Upon returning to the court room, defense counsel discussed the matter of his representation of the Defendant with the trial court, but was not asked if he had met with the Defendant within the past thirteen months.

25

Accordingly, the record before the court is insufficient to rule on the Defendant's claim. Thus, we regulate this claim to post-conviction relief.

**CONCLUSION:**

The Defendant's conviction is affirmed. However, the Defendant's sentence is vacated and the matter remanded for resentencing in accordance with La.R.S. 14:64 and 14:64.3. The trial court should clearly set forth the portion of the sentence enhanced under La.R.S. 14:64.3. Additionally, we instruct the trial court that the portion of the sentence enhanced under La.R.S. 14:64.3 is not to be served at hard labor.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Uniform Rules– Courts of Appeal, Rule 2–16.3.